**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**DEBRA KILMER,**

    **Plaintiff,**

**v.**                                                                                        **Case No: 5:14-cv-456-Oc-34PRL**

**HOWMEDICA OSTEONICS CORP.**

    **Defendant.**

_____

### REPORT AND RECOMMENDATION[1]

In this products liability action, Plaintiff Debra Kilmer sues Defendant Howmedica Osteonics Corporation on multiple theories of negligence and strict liability, alleging that a defectively designed knee device implanted in her during surgery subsequently caused her severe pain and discomfort. The question before the Court is whether the additional facts Plaintiff has added to the Second Amended Complaint—namely that the plastic insert (menisci replacement plate) or its absence left Plaintiff with a metal-on-metal knee implant which caused severe pain—are now sufficient to survive Defendant's 12(b)(6) motion to dismiss.

**I.   BACKGROUND**

The Triathlon Total Knee System (the "Triathlon System") is an artificial knee prosthesis designed, manufactured, and distributed by Defendant, Howmedica Osteonics Corp.  (Doc. 34, ¶ 6).  In early 2011, a surgeon implanted the Triathlon System into Plaintiff's left knee during a total knee replacement procedure.  According to Plaintiff, at some unspecified point after the

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

device was implanted, she experienced knee pain, discomfort, joint instability, and mobility limitations. *Id.* at ¶ 8. As she says, again without telling the reader when, "diagnostic testing" revealed that the device had failed, and she subsequently had it replaced. *Id.* at ¶ 9.

Sometime after the device was replaced, Plaintiff initiated this action in State court. (Doc. 1). She now seeks to recover damages and costs from Defendant (who removed the case) based on causes of action for Negligence (Count I); Strict Liability for Failure to Warn (Count II), Design (Count III) and Manufacturing Defect (Count IV); and Negligent Misrepresentation (Count VI).[2] (Doc. 34).

Notably, after Defendant removed this action, the Court *sua sponte* dismissed Plaintiff's original complaint as a shotgun pleading. (Doc. 3). Additionally, since its filing Plaintiff has dropped two defendants. (Doc. 18). After this Court entered a Report (Doc. 29) recommending that Plaintiff's Amended Complaint (Doc. 6) be dismissed in its entirety, Plaintiff amended her pleading without filing any objections (Doc. 34), rendering the Report and Recommendation moot (Doc. 35). Defendant now moves again to dismiss all of Plaintiff's claims (Doc. 36), to which she has responded (Doc. 38).

In her Amended Complaint, Plaintiff failed to allege what the defect in the implant was or provide any facts that could be plausibly interpreted to convey the alleged defect. Plaintiff's Second Amended Complaint (hereinafter "complaint") attempts to remedy this omission by alleging that "[s]pecifically, the knee implant was defectively designed as either the necessary plastic insert (menisci replacement plate) was not part of the Defendant's product design or same was defectively designed so as to leave the Plaintiff with a metal-on-metal knee implant." *Id.* at ¶¶ 26, 35, 45, 51, 63.

---

[2] Plaintiff withdrew her claim for Negligence *Per Se* (Count V) in her Response in Opposition to Defendant's Motion to Dismiss. (Doc. 38, p. 3).

Upon referral, Defendant's Motion to Dismiss should be **GRANTED in part and DENIED in part**, as Plaintiff's complaint addresses most, but not all, of the Court's concerns with her prior pleading. In particular, the allegation in Count VI is still deficient, but Counts I, II, III, and IV now state claim's for which relief may be granted.

## II. LEGAL STANDARD

The bare minimum a plaintiff must set forth in a complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

**III.   DISCUSSION**

In response to this multi-count complaint, Defendant seeks dismissal of each count and argues again that the pleading is inadequate under *Iqbal* and *Twombly* and Fed. R. Civ. P. 8, and, more specifically, that Count VI (negligent misrepresentation) is due to be dismissed under Fed. R. Civ. P. 9's particularity standard. As discussed below, I recommend that the Court deny in part and grant in part Defendant's motion to dismiss.

**A. Count I: Negligence**

Count I alleges that the plastic insert (menisci replacement plate) manufactured by Defendant and implanted in Plaintiff during knee surgery was defectively designed as either it was not part of the product design or it left Plaintiff with a metal-on-metal knee implant, causing severe

pain and discomfort to Plaintiff. (Doc. 34, ¶¶ 25–26). Defendant seeks to dismiss Count I, arguing that Plaintiff fails to sufficiently plead duty, breach, and causation. (Doc. 36, p. 19).

"Under Florida law, in order to state a proper negligence claim, a 'plaintiff must allege (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damages.'" *Dimieri v. Medicis Pharm. Corp.*, 2014 WL 3417364, at *8 (M.D. Fla. July 14, 2014) (quoting *Small v. Amgen, Inc.*, 2014 WL 897033, at *5 (M.D. Fla. Mar. 6, 2014)).

Whether a duty of care exists is a threshold question of law. *See Brandt v. Depuy Orthopaedics, Inc.*, 2010 WL 2612037, at *3 (M.D. Fla. June 28, 2010) (citing *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009)). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). Where a product is allegedly defective "and that defect rises to the level of a dangerous condition, the manufacturer or designer has created a zone of risk to all parties who may come in contact with the product." *Id.* (quoting *Stazenski v. Tennant Co.*, 617 So. 2d 344, 346 (Fla. Dist. Ct. App. 1993)). Thus, the manufacturer has "a duty to use reasonable care to design a product that is reasonably safe for its intended use and for other uses which are foreseeably probable." *Id.* (quoting *Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1085 (Fla. Dist. Ct. App. 2006) (internal quotation omitted)).

As a surgical patient for her knee replacement, Plaintiff was a foreseeable user of Defendant's Triathlon System. Her allegations that the Defendant designed, manufactured, and marketed its knee replacement device are sufficient to plausibly establish that Defendant owed

Plaintiff a duty to exercise reasonable care with respect to its Triathlon System. (Doc. 34, ¶¶ 22–23); see *Brandt*, 2010 WL 2612037, at *3 (finding manufacturer owed surgical patient duty to exercise reasonable care in design and manufacture of femoral knee component).

Although Plaintiff's amended recitation of breach and causation are minimal, cases have survived motions to dismiss with similarly sparse factual allegations. *See, e.g.*, *Small*, 2014 WL 897033, at *6 (pleading that defendants breached the duty of pharmacovigilance and asserting that defendants learned through clinical trials of Enbrel's serious problems); *Hosler v. Alcon Labs., Inc.*, No. 12-60025-CIV, 2012 WL 4792983, at *3 (S.D. Fla. Oct. 9, 2012) (alleging that defendant breached duties in particular ways, such as failing to warn doctors and patients of dangers for treatment post-PRK surgery, including corneal scarring); *Brandt*, 2010 WL 2612037, at *3 (identifying the component of the knee replacement device that was defective). Here, Plaintiff alleges that Defendant breached its duty to make a reasonably safe product in so far as Defendant knew or should have known that its product caused significant bodily harm and that it manufactured a knee device that causes painful metal-on-metal rubbing. (Doc. 34, ¶¶ 28–30).

Further she alleges that she sustained physical and mental injuries as a direct and proximate result of Defendant's acts and omissions in connection with the defective knee device. *Id.* at ¶ 31. Accordingly, she has now sufficiently pled each element of a claim of negligence against Defendant.

### B. Counts III and IV: Strict Liability – Design and Manufacturing Defect

In Counts III and IV, Plaintiff alleges that the Triathlon System suffered from both design and manufacturing defects. Courts in the Eleventh Circuit regularly allow plaintiffs to plead multiple theories (e.g., both design and manufacturing defect), providing that they adequately allege the defect. *See Brandt*, 2010 WL 2612037, at *3 (quoting *Bailey v. Janssen*

*Pharmaceutica, Inc.*, 288 F. App'x 597, 605–06 (11th Cir. 2008) (finding plaintiff's allegations sufficient where the plaintiff identified the source of the defect, namely, that the femoral knee component delaminated and malfunctioned, even though plaintiff did not specify whether the defect was either a design or manufacturing one). Thus, at this stage in the proceedings, Plaintiff may plead strict liability claims for both design and manufacturing defects. *See Bailey*, 288 F. App'x at 605 ("[I]t would be difficult at such an early stage in the litigation for a plaintiff to know whether a defect was due to a product's design or manufacture . . . .").

Under Florida law, in order to state a cause of action for strict products liability, a plaintiff must allege: "(1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; [and] (3) causation between the defect and the harm suffered by the user." *Id.* at 607.

As to the first prong, Plaintiff alleges a relationship between Defendant and the product by stating that "Defendant developed, tested, . . . manufactured, . . . and/or sold the defective Triathlon knee." (Doc. 34, ¶ 6). Next, Plaintiff asserts that the knee implant was defective and unreasonably dangerous because "the necessary plastic insert (menisci replacement plate) was not part of the Defendant's product design or same was defectively designed so as to leave the Plaintiff with a metal-on-metal knee implant." *Id.* at ¶¶ 45, 51. Finally, as to the third element, Plaintiff alleges that the implantation of the defectively designed device caused severe pain, discomfort, joint instability, and limitation on mobility. *Id.* at ¶¶ 8, 45, 51.

Plaintiffs have survived a motion to dismiss in these types of cases where they have alleged which components of the device were defective and how they were defective. *See, e.g., Brandt*, 2010 WL 2612037, at *3 (alleging that the femoral knee component was defective in that it delaminated or otherwise malfunctioned); *see also Travelers Prop. Cas. Co. of Am. v. Charlotte*

*Pipe & Foundry Co.,* 2012 WL 983783, at *5 (M.D. Fla. Mar. 22, 2012) (specifically emphasizing that "the allegations in *Brandt* specifically stated the part of the product that contained the alleged design—the femoral knee component of a knee prosthesis—and the defect—that the component delaminated"); *Witt v. Howmedica Osteonics Corp.*, 2014 WL 1330840, at *2 (S.D. Fla. Mar. 28, 2014) (denying second motion to dismiss strict liability for design defect after plaintiff amended the complaint to include the portion of the prosthesis alleged to be defective (the femoral component) and how it was defective (loosening after implantation)).

Here, the critical additions to the complaint are the allegations regarding *which* component of the device failed—*i.e.* the necessary plastic insert (menisci replacement plate)—and *how* it failed—creating a metal-on-metal rubbing which caused severe pain. Plaintiff's previous pleading failed to explain how or why the device failed. Instead, she merely alleged that the device "was defective in design and formulation in that . . . the foreseeable risks of the product exceeded the benefits . . . or it was more dangerous than the ordinary customer would expect." (Doc. 6, ¶ 47). Such allegations told the Court nothing about the device or the alleged failure. (Doc. 29, p. 5).

Now in her complaint, Plaintiff has added the component of the knee device which is alleged to be defective, as well as the nature of the failure. Defendant's argument that Plaintiff has failed to specifically identify the exact component is unavailing. (Doc. 36, p. 13). Plaintiff's complaint provides Defendant with notice as to what component is alleged to have created a defective implant and the nature of the subsequent problems.

Defendant's contention that Plaintiff's claim of a manufacturing defect should be dismissed as mispled also fails. While it is true that Plaintiff specifically states that the knee implant was "defectively designed" in the paragraphs describing the component and its failure, she also states

that the "devices as manufactured and supplied by Defendant were defective" (Doc. 34, ¶ 44) and "the devices . . . were defective in their manufacture" *id.* at ¶ 49.  As noted above, it is difficult at this stage of the litigation for a plaintiff to know the source of the defect that was responsible for the harm caused.  *See Brandt*, 2010 WL 2612037 at *3.  Thus, Plaintiff's additional allegations that the plastic insert/menisci replacement plate was defective as to design and manufacture are sufficient to state a claim under these counts.

### C.  Count II Strict Liability – Failure to Warn

Next, in Count II, Plaintiff claims that Defendant "failed to provide adequate and timely warnings or instructions regarding the Stryker Triathlon device and its known defects."  (Doc. 34, ¶ 41).  Under Florida law, "[t]o establish strict liability for failure to warn, plaintiff must prove that defendant (a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution."  *Pinchinat v. Graco Children's Products, Inc.*, 390 F. Supp. 2d 1141, 1146 (M.D. Fla. 2005) (citing *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1172 (Fla. Dist. Ct. App. 1998) (reversed on other grounds 795 So. 2d 126 (Fla. Dist. Ct. App. 2001))).  Plaintiff's thin complaint appears to establish both requirements.  First, Plaintiff alleges that Defendant manufactured and distributed the Stryker Triathlon knee implant.  (Doc. 34, ¶ 33).

Second, Plaintiff alleges that a particular known or knowable risk went unwarned; Defendant failed to warn that the implant might "leave [her] with a metal-on-metal knee implant, [which] caus[es] severe pain and discomfort."  (Doc. 34, ¶¶ 35, 41); *see Jozwiak v. Stryker Corp.*, No. 6:09CV1985ORL19GJK, 2010 WL 743834, at *7 (M.D. Fla. Feb. 26, 2010) (finding a properly stated "strict liability claim for failure to warn" as the plaintiff alleged that "[d]efendants

placed no warning" at all on the product). In describing the failure to warn of a possible "metal-on-metal" condition, the Plaintiff "describe[s] the manner in which the warning was inadequate." *Bailey*, 288 F. App'x at 609; *cf. Witt*, 2013 WL 6858395, at *3 (dismissing a claim of strict liability for failure to warn where the complaint merely "state[d] that Defendant failed to give proper warnings and that the warnings were 'inadequate'"). Thus, Plaintiff has sufficiently plead a failure to warn claim.

### D. Count VI: Negligent Misrepresentation

Finally, as to Count VI, Plaintiff alleges that Defendant "breached [its duty] by misrepresenting and/or failing to adequately warn Plaintiff's physicians, the medical community, Plaintiff, and the public about the risks of the Stryker Triathlon." (Doc. 34, ¶ 67). In response, Defendant argues that Plaintiff has failed to plead her negligent misrepresentation claim with the particularity required by Fed. R. Civ. P. 9(b). (Doc. 36, p. 8). I agree.

A party stating a cause of action for fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Florida law, this heightened pleading requirement also applies to negligent misrepresentation claims. *See Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1324 (M.D. Fla. 2013). Thus, "[i]n order to satisfy Rule 9(b), a complaint must allege facts regarding the 'time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* (quoting *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (internal quotation marks omitted)).

Here, under Fed. R. Civ. P. 9(b), Plaintiff's negligent misrepresentation claim falls short. As Defendant argues, the complaint does not specify the content of the alleged misrepresentations regarding the safety of the Triathlon System, when the misrepresentations were made, who made

the misrepresentations or the manner in which they were communicated, how the misrepresentations were inadequate, and how Defendant induced Plaintiff into relying on the misrepresentations. (Doc. 34, ¶¶ 61–68 & Doc. 36, pp. 8–10). *See Chapman*, 930 F. Supp. 2d at 1324 (dismissing negligent misrepresentation claim as "conclusory" and "devoid of specifics regarding the time, place, and substance of the alleged fraud"); *Bailey v. Janssen Pharmaceutica, Inc.*, 2006 WL 3665417, at *7 (S.D. Fla. Nov. 14, 2006) *aff'd*, 536 F.3d 1202 (11th Cir. 2008) (dismissing negligent misrepresentation claim where Plaintiff failed to state how the misrepresentation was inadequate). Thus, Plaintiff's negligent misrepresentation claim is due to be dismissed.[3]

## IV. RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss (Doc. 36) be **DENIED** as to Counts I, II, III, and IV and **GRANTED** as to Count VI.

---

[3] In addition, Plaintiff's claim likely fails to the extent it is based on her reliance on Defendant's misrepresentations provided directly to her. The learned intermediary doctrine holds that:

> "[a] manufacturer of a dangerous commodity, such as a drug, does have a duty to warn but when the commodity is a prescription drug . . . this duty . . . is fulfilled by an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs" acting as a "learned intermediary" between the manufacturer or seller and the patient.

*Cruz*, 2010 WL 598688, at *3 (quoting *Buckner v. Allegan Pharm., Inc.*, 400 So. 2d 820, 822–23 (Fla. Dist. Ct. App. 1981)). As the patient, Plaintiff lacked access to the Triathlon System without the assistance of her surgeon, and as a result, the manufacturer owed no duty to warn her directly. *See id.* While under certain circumstances the learned intermediary doctrine will not shield a manufacturer that advertises directly to the ultimate consumer, *see Beale*, 492 F.Supp.2d at 1368, Plaintiff has made no such specific allegations in the complaint.

Plaintiff attempts to salvage her negligent misrepresentation claim by misconstruing Defendant's argument regarding the learned intermediary doctrine. While she correctly argues that courts have held that manufacturers can be held liable when a patient's doctor relies upon an inaccurate or incomplete warning (Doc. 38, p. 3), Defendant's contentions here regarding the doctrine extend to the limited allegation that Defendant made misrepresentations or omissions to *Plaintiff herself*. Defendant does argue that the entire claim should be dismissed, but does so on the basis of both Fed. R. Civ. P. 9(b) and the learned intermediary doctrine. The fact that the complaint fails to specify any facts surrounding the alleged misrepresentations or omissions alone, as described above, is fatal to Plaintiff's claim.

...

Recommended in Ocala, Florida on September 2, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy